## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLEN G. LEVINE,<br>    25047 Fairview Avenue<br>    Hayward, CA 94542<br><br>on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN PSYCHOLOGICAL<br>ASSOCIATION, INC.<br>    750 First Street, N.E.<br>    Washington, DC 20002<br><br>    and<br><br>AMERICAN PSYCHOLOGICAL ASSOCIATION<br>PRACTICE ORGANIZATION,<br>    750 First Street, N.E.<br>    Washington, DC 20002,<br><br>    Defendants, jointly and severally. | CASE NO. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff through the undersigned attorneys, individually and on behalf of all others similarly situated, as set forth below, and complains against Defendants as follows:

### INTRODUCTION

1.      This lawsuit is brought as a class action on behalf of Plaintiff and tens of thousands of similarly situated members of The American Psychological Association ("APA"), who have purchased misrepresented "mandatory" annual memberships in an organization known as American Psychological Association Practice Organization ("APAPO"). APA, a Washington, D.C. based corporation, is the world's

largest association of licensed psychologists with hundreds of thousands of members, including thousands of members in the state of Plaintiff's residence, California. APAPO is a separate organization operated by the same leadership as APA from the same address in Washington, D.C., which conducts professional advocacy and lobbying on behalf of members. Defendant APA, for many years dating back over two decades, has represented to its members in connection with renewal of annual membership contracts that a "mandatory" special assessment over and above the annual dues was required, currently amounting to approximately $140.00 per member per year, without adequately disclosing that this "mandatory" assessment in fact was completely voluntary and was solely for membership in an additional organization, the APAPO. APAPO is organized under section 501(c)(6) of the Internal Revenue Code, ostensibly as an organization that is separate from APA, for purposes of conducting lobbying and advocacy activities which would not be lawful for the different type of 501(c)(3) non-profit organization such as APA. Recognizing that many of its members would not want to voluntarily pay to fund this lobbying and advocacy organization, APA embarked on a deliberate deception designed and intended to maximize lobbying funds outside of the proper lawful function of a 501(c)(3) entity like APA and misrepresented to members in APA that as part of annual membership renewal there was a "mandatory" practice assessment, which APA allocated to APAPO. This "mandatory" assessment amounts to an approximately $6,000,000 per year assessment against the class.

## JURISDICTION/VENUE

2.     Plaintiff is a resident of California and at all times relevant has been a member of the APA.

3.      Defendants are related Washington, D.C. nonprofit corporations with their principal places of business in Washington, D.C., and which conduct business throughout the United States, including in this District.

4.      This Court has diversity jurisdiction pursuant 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA"), because there are thousands of class members and this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs and is a class action in which…any member of [the] class of plaintiffs is a citizen of a state different from any defendant."—i.e., here the improper charges at issue far exceed $5,000,000, because they run around $6,000,000 per year for the past several years; and Plaintiff and thousands of other class members are citizens of states different from the Washington, D.C. citizenship of Defendant .

5.      Venue is proper in this District under 28 U.S.C. § 1391, because Defendants are citizens of and are located in this District.

## FACTS

6.      APA   is   the   world's   largest   organization   representing psychologists—both clinical, teaching and research psychologists (and many other types too numerous to mention here).   Recognizing that it was illegal for a 501(c)(3) organization like APA to engage in lobbying and lobbying fundraising (beyond certain relatively small limits), APA leadership created a 501(c)(6) lobbying entity in 2001 known as APAPO.  However, APA has been assessing clinicians—those psychologists who actually practice clinical psychology and do psychotherapy—a special fee with their annual APA dues statement represented as a mandatory practice assessment, which

assessment was then allocated by APA leadership to APAPO. In other words, the APA employed a subterfuge to function as a lobbying and lobbying fundraising entity.

7.      In fact, when many APA members began in 2010 to understand and challenge the subterfuge, APA acknowledged that the manner in which APA and APAPO Division dues had been combined on past dues statements failed to make clear that the "mandatory" practice assessment payment was required for APAPO membership but not for APA membership.

8.      The APAPO practice assessment is not trivial, amounting to over 50% of the amount of the APA dues—e.g., in 2009 this assessment was $137 per person, while the annual APA dues themselves were $238.

9.      APA's website in 2002 stated that members "… **must pay** the Special Assessment …"

10.     This wording continued for a years on the APA website and via dues explanation sheets disseminated to members, using the words "must pay," although the fee's name was changed from a special assessment to a practice assessment in 2005.

11.     However, even after acknowledging the deceptive language of the past dues statements, APA has continued to deceptively pre-print the practice assessment on the 2011 annual dues renewal form for APA membership so as to create the continued impression to the reader that the assessment is mandatory.

12.     Until discovered and announced by some APA members in 2010, it was unknown by the membership, and not reasonably capable of being known due to fraud and deceit by APA/APAPO leadership, that the purportedly mandatory APAPO assessment was not mandatory.

13.     Moreover, until dissemination by Defendants of a revised dues statement form in May, 2010, it was unknown by Plaintiff and members of the class, and not reasonably capable of being known, that the purportedly mandatory APAPO assessment was a means by which APA/APAPO leadership secretly, fraudulently and with intent to deceive, had set up the dues arrangement described hereinabove so as to illegally collect lobbying funds from a membership which the leadership knew otherwise would be unwilling to donate or provide through dues or otherwise the annual APAPO assessments described hereinabove

14.     Due to Defendants' fraudulent concealment of these facts it would be unjust and inequitable for statutes of limitations to run against Plaintiff and/or other class members regarding APAPO assessments paid prior to the otherwise applicable beginning of the limitations time period, requiring that the limitations period be tolled during the time period when these facts were fraudulently concealed by Defendants.

## CLASS ACTION ALLEGATIONS

15.     **Class Definition**. The proposed class consists of:

   a.     all APA members in California who, like Plaintiff, paid as part of their annual dues a charge for membership in an affiliated organization known as APAPO;

   b.     all APA members in the United States who paid as part of their annual dues a charge for membership in an affiliated organization known as APAPO;

16.     Plaintiff is a member of the proposed class.

17.     Plaintiff excludes from the Class any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; and any Judge to whom this case is assigned as well as his or her immediate family.

18.     **Numerosity of the Class (Fed. R. Civ. P. 23(a)(1)).** Members of the Class are so numerous that their individual joinder is impracticable.  Defendant has thousands members in California and nationwide who have been wrongfully charged the "mandatory" fees at issue.

19.     **Existence and Predominance of Common Questions of Law and Fact (Fed. R. Civ. P. 23(a)(2) & (b)(3)).**   Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual Class Members.  These common questions of law and fact include:

i.      Whether Defendant, APA, breached its contract by charging APA members a voluntary fee misrepresented in a way to indicate that it was mandatory;

ii.     Whether class members are entitled to damages and/or restitution, plus costs, interest, and attorney fees;

iii.    Whether restitution and/or damages should be paid by Defendant into a common fund for the benefit of the Class;

v.      Whether declaratory and/or injunctive relief should be granted requiring that Defendant cease its wrongful billing practices.

20.     **Typicality (Fed. R. Civ. P. 23(a)(3)).**  Plaintiff is a member of the Class with claims which are typical of the claims of other Class Members.  Like all

Class Members, Plaintiff has been injured by Defendant's common wrongful billing practice of misrepresenting voluntary fees as mandatory annual dues fees.

21. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).** Plaintiff will fairly and adequately represent and protect the interests of the Class. Her interests are coincident and not antagonistic to those of Class Members. Plaintiff has retained Counsel that are competent and experienced in litigating class actions and have no conflicts in undertaking this litigation.

22. **Class certification under Federal Rule of Civil Procedure 23(b)(1), (2), (3):**

> **(b)(3)** Due to the uniformity of the injuries experienced by Class Members (wrongful assessment of monetary fees) and the predominance over individual issues of common issues of fact and law a class action is superior to all other available means for the fair and efficient adjudication of the controversy;

> **(b)(1)** Adjudication of individual claims would be prohibitively expensive for individual Class Members and for the court system as a whole. Individualized litigation would create the risk of inconsistent or varying adjudication that could establish incompatible standards of conduct for Defendant and would create the risk of adjudications that would, as a practical matter, be dispositive of the interests of Class Members not parties to the adjudications. By contrast, the class action device provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court;

**(b)(2)** Defendant has acted on grounds generally applicable to all members of the class regarding final injunctive and declaratory relief barring future improper billing practices.

## COUNT I- UNJUST ENRICHMENT

23.     Plaintiff re-alleges and incorporates all prior paragraphs.

24.     Retention by Defendants of ill-gotten gains obtained from APA members via deceptive and predatory billing practices designed to unfairly fund another organization operated by Defendants would be unjust and unfair.

25.     Defendants should be ordered to disgorge their ill-gotten gains and provide restitution to Plaintiff and members of the class into a common fund for the benefit of the class.

## COUNT II-VIOLATION OF CAL.BUS. & PROF.CODE, §§17200 & 17500, *ET SEQ.*

26.     Plaintiff incorporates by reference all prior paragraphs.

27.     At all times relevant Plaintiff was a resident of California when receiving and responding to APA renewal information from Defendants.

28.     California Business & Professional Code § 17200 prohibits any "unlawful...business act or practice", any "unfair...business act or practice", and any "fraudulent business act or practice". California Business & Professional Code § 17500 prohibits the use of false or misleading statements.

29.     The practice by APA of representing an assessment dedicated to APAPO as being required for membership in APA when, in truth, APA membership renewal did not require payment of the APAPO practice assessment was an unfair business act or practice because the practice was immoral, unethical, oppressive, or

8

unscrupulous and because whatever utility could be associated with Defendants' conduct is outweighed by the harm to Plaintiff and members of the class.

30.    The practice by APA of representing an assessment dedicated to APAPO as being required for membership in APA when, in truth, APA membership renewal did not require payment of the APAPO practice assessment was an unlawful business act or practice because it was part of a subterfuge to defeat the restrictions on lobbying and lobbying fund raising for a 501(c)(3) organization like APA in violation of the Internal Revenue Code.

31.    The practice by APA of representing an assessment dedicated to APAPO as being required for membership in APA, when, in truth, APA membership renewal did not require payment of the APAPO practice assessment was a fraudulent business act or practice because it was likely to deceive, and did in fact deceive, Plaintiff and members of the class.

32.    As a direct and proximate result of these fraudulent, unfair, and/or unlawful practices Defendants have bilked Plaintiff and thousands of other similarly situated APA members in California and around the nation of millions of dollars.

### COUNT III-FRAUD & DECEIT

33.    Plaintiff incorporates all prior paragraphs.

34.    At all times relevant, Defendants imposed the APAPO special assessment and practice assessment knowingly, willfully, and purposefully to deceive Plaintiff and the class by making fraudulent representations regarding the mandatory nature of annual APAPO assessments as described above.

35.    Defendants intended that Plaintiff and the class would rely on the misrepresentations regarding the APAPO assessments, the misrepresentation that the assessment was mandatory or required as part of annual APA renewal dues was material to decisions by Plaintiff and other members of the class to pay the assessments, and in fact was relied upon by Plaintiff and members of the class who had no reasonable means of knowing that the representations were deceptive and fraudulent.

36.    As a direct and proximate result of Defendants' fraud as described above, Plaintiff and other members of the class have paid tens of millions of dollars of ill-gotten gains to Defendants in the form of receipt of identical APAPO assessment payments from Plaintiff and thousands of other class members, which should be disgorged into a common fund for the benefit of the class, along with exemplary and punitive damages in an amount sufficient to be an example to others and to deter Defendants in the future.

## COUNT IV-NEGLIGENT MISREPRESENTATION

37.    Plaintiff incorporates all prior paragraphs.

38.    At all relevant times, Defendants made material misrepresentations of fact with regard to the mandatory nature of the APAPO practice assessments as described above without reasonable ground for believing such misrepresentations were true.

39.    Defendants intended that Plaintiff and members of the class rely on these misrepresentations. Plaintiff and members of the class did justifiably rely on these misrepresentations and suffer damages as a result by paying the APAPO practice assessments.

WHEREFORE, Plaintiff asks for the following relief:

A.     An order certifying the Class and appointing Plaintiff and her counsel to represent the Class;

B.     Monetary relief and/or equitable relief (including without limitation damages and/or restitution to Plaintiff and the Class) payable into a common fund in an amount to be determined at trial;

C.     Statutory damages, including double and/or treble damages;

D.     Exemplary damages;

E.     Punitive damages;

F.     Interest;

G.     Attorneys' fees and costs of suit, including costs of notice, administration, and expert witness fees; and

H.     Such other legal or equitable relief, including injunctive and/or declatory relief, as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Hassan A. Zavareei
  D.C. Bar No. 456161
Lorenzo B. Cellini
  D.C. Bar No. 502441
TYCKO & ZAVAREEI LLP
2000 L Street N.W., Suite 808
Washington, DC  20036
(202) 973-0900 (telephone)
(202) 973-0950 (fax)
hzavareei@tzlegal.com
lcellini@tzlegal.com

Mark S. Baumkel
LAW OFFICES OF MARK S. BAUMKEL & ASSOCIATES
30200 Telegraph Road, Suite 200
Bingham Farms, MI  48025
Tel: (248) 642-0444
Fax: (248) 642-6661
m.baumkel@p-ppclawfirm.org

E. Powell Miller
Ann L. Miller
The Miller Law Firm
Co-counsel for Plaintiffs
950 W. University Dr., Ste. 300
Rochester, MI 48307
(248)841-2200
epm@millerlawpc.com
alm@millerlawpc.com

*Attorneys for Plaintiff Ellen G. Levine*