## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLEN G. LEVINE, RUTH FALLENBAUM, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>AMERICAN PSYCHOLOGICAL ASSOCIATION, INC. and AMERICAN PSYCHOLOGICAL ASSOCIATION PRACTICE ORGANIZATION,<br>Defendants, jointly and severally. | Lead Civil Action No. 1:10-CV-01780 (D.D.C.) |
| ERIC S. ENGUM, on behalf of himself and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>AMERICAN PSYCHOLOGICAL ASSOCIATION, INC. and AMERICAN PSYCHOLOGICAL ASSOCIATION PRACTICE ORGANIZATION,<br>Defendants, jointly and severally. | Civil Action No. 1:10-CV-01898 (D.D.C.) (consolidated with 1:10-CV-01780 (D.D.C.)) |
| IRA GROSSMAN, on behalf of himself and all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>AMERICAN PSYCHOLOGICAL ASSOCIATION, INC. and AMERICAN PSYCHOLOGICAL ASSOCIATION PRACTICE ORGANIZATION,<br>Defendants, jointly and severally. | Civil Action No. 13-cv-02034-JDB (D.D.C.) (transferred from Civil Action No. 13-cv-0736L-JMA (S.D. Ca.)) |

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,  CERTIFICATION OF SETTLEMENT CLASS,  AND SETTING OF A FINAL APPROVAL HEARING

Plaintiffs Ellen G. Levine, Ruth Fallenbaum, Eric S. Engum, and Ira Grossman ("Plaintiffs" or "Representative Plaintiffs"), individually and on behalf of the proposed Settlement Class (defined in the January 23, 2015 Settlement Agreement, attached hereto as Exhibit 1), respectfully submit their unopposed motion for and incorporated statement of points and authorities in support of motion for preliminary approval of class action settlement, certification of settlement class, and setting of a final approval hearing.  This motion is accompanied by the Settlement Agreement and exhibits thereto, the Declaration of Hassan A. Zavareei ("HAZ Decl."), and exhibits thereto, the Declaration of Edward A. Wallace ("EAW Decl.") and exhibits thereto, and a proposed order.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

LIST OF EXHIBITS .......................................................................................................... vi

STATEMENT OF POINTS AND AUTHORITIES ................................................................ 1

I.      INTRODUCTION ................................................................................................... 1

II.     PRELIMINARY APPROVAL IS APPROPRIATE .......................................................... 6

     A.     The Parties Undertook Arms-length Negotiations .................................................. 7

     B.     Lead Settlement Class Counsel Had Sufficient Information To Make A
Reasonable Assessment Of The Risks Of Litigation. ........................................... 11

     C.     The Settlement Provides Excellent Relief for Settlement Class Members ........... 14

     D.     The Settlement Fairly Allocates the Settlement Fund .......................................... 16

III.    CERTIFICATION OF THE SETTLEMENT CLASS ................................................... 16

     A.     The Settlement Class Meets All the Requirements for Class Certification
Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure .......................... 17

          1.     The Class is Sufficiently Numerous Because Joinder of All Members
of the Class is Impracticable ................................................................. 17

          2.     Questions of Law and Fact Are Common to the Settlement Class ........... 18

          3.     Representative Plaintiffs' Claims are Typical of the Settlement Class .... 19

          4.     Rule 23(a)'s Adequacy Requirement is Satisfied ..................................... 19

     B.     The Requirements of Rule 23(b)(3) are Satisfied ................................................. 20

IV.    NOTICE ............................................................................................................. 22

     A.     Contents of Notice ............................................................................................. 24

          1.     Opting Out ............................................................................................. 24

          2.     Objecting ............................................................................................... 25

     B.     Scope of Notice .................................................................................................. 25

V.     CONCLUSION ..................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 16, 21

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982) .............................................................................. 23

*Browning v. Yahoo! Inc.*,
  2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ...................................... 26

*Bynum v. Dist. Of Columbia,*
  217 F.R.D. 43 (D.D.C. 2003) ........................................................................... 18, 21

*Chad Minnick, et al. v. Clearwire US, LLC,*
  No. 09-cv-00912 (W.D. Wash.) ............................................................................... 9

*Coleman v. Pension Benefit Guar. Corp.*,
  196 F.R.D. 193 (D.D.C. 2000) ............................................................................... 18

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ..................................................................................... 7

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................................... 21

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................. 22, 23, 25

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................... 19

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
  446 U.S. 318 (1980) ............................................................................................... 17

*Gregory Geis and Stuart Roper, et al. v. Airborne Health, Inc., et al.*,
  No. 07-cv-04238 (D. NJ) .......................................................................................... 9

*Gunnells v. Healthplan Servs.*,
  348 F.3d 417 (4th Cir. 2003) ................................................................................. 12

*Guy v. Casal Institute of Nevada, LLC*,
  No. 13-cv-02263, 2014 WL 1899006 (D. Nev. May 12, 2014) .............................. 26

*In re Baan Co. Sec. Litig.*,
  284 F. Supp. 2d 62 (D.D.C. 2003) ......................................................................... 15

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ................................................................................... 8

*In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013) ............................................................................. 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
 205 F.R.D. 369 (D.D.C. 2002)................................................................................................ 4, 14

*In re Lupron Mktg. and Sales Practices Litig.*,
 228 F.R.D. 75 (D. Mass. 2005)................................................................................................ 21

*In re NASDAQ Market-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................................. 7

*In re National Student Marketing Litigation*,
 68 F.R.D. 151 (D.D.C. 1974)..................................................................................................... 6

*In re Pet Foods Prods. Liab. Litig.*,
 MDL No. 1850 (D.N.J.)............................................................................................................. 10

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
 MDL No. 1456, No. 01-cv-12257-PBS (D. Mass.) ................................................................. 10

*In re Prudential Securities Incorporated Limited Partnerships Litigation*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................................................ 7

*In re TD Ameritrade Account Holder Litig.*,
 No. C 07–2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)..................................... 26

*In re Vitamins Antitrust Litig.*,
 209 F.R.D. 251 (D.D.C. 2002)................................................................................................... 18

*In re: Vitamins Antitrust Litig.*,
 1999-2 Trade Cas. ¶ 72, 726, 1999 WL 1335318 (D.D.C. Nov. 23, 1999).......................... 6, 13

*Jessica Duval, et al. v. Citizens Financial Group, Inc., et al*,
 No. 1:10-cv-21080 (S.D. Fla.) .................................................................................................... 9

*Jo Huskey, et al. v. Ethicon, Inc.*,
 No. 12-cv-05201 (S.D.W. Va.) ................................................................................................. 10

*Lane v. Facebook*,
 No. C 08-3845 RS, 2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) ....................... 26

*Lorazepam v. Mylan Laboratories, Inc.*,
 MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) ................................................. 11

*Luevano v. Campbell*,
 93 F.R.D. 68 (D.D.C. 1981)....................................................................................................... 12

*Mascaro, et al. v. TD Bank, Inc.*,
 No. 10-cv-21117 (S.D. Fla.) ....................................................................................................... 9

*Maywalt v. Parker and Parsley Petroleum Co.*,
 67 F.3d at 1079 ...................................................................................................................... 24, 25

*McReynolds v. Sodexho Marriott Services, Inc.*,
 208 F.R.D. 428 (D.D.C. 2002)................................................................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950).................................................................................................................... 25

*Osher v. SCA Realty I*,
　945 F. Supp. 298 (D.D.C. 1996) ........................................................................... 4, 7

*Peters v. Nat'l R.R. Passenger Corp.*,
　966 F.2d 1483 (D.C. Cir. 1992) .............................................................................. 22

*Phillips Co. v. Shutts*,
　472 U.S. 797 (1985) ........................................................................................... 22, 25

*Pigford v. Glickman*,
　185 F.R.D. 82 (D.D.C. 1999) ................................................................................... 4

*Radosti v. Envision EMI, LLC*,
　717 F. Supp.2d 37 (D.D.C. 2010) ........................................................................... 13

*Ramirez v. eWork, Inc.*,
　No. 06 cv 00686 WDM BNB, 2008 U.S. Dist. LEXIS 69700 (S.D. Colo. Sept. 15, 2008)..... 26

*Reilly v. Tucson Elec. Power Co.*,
　512 U.S. 1220 (1994) .............................................................................................. 25

*Roberts, et al. v. Electrolux Home Prods., Inc.*,
　No. 12-cv-01644 (C.D. Cal.) .................................................................................. 10

*Shannon Schulte, et al. v. Fifth Third Bank.*,
　No. 1:09-cv-06655 (N.D. Ill.) .................................................................................. 9

*Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n*,
　79 F.R.D. 571 (E.D. Pa. 1978) ................................................................................. 6

*Sunrise Toyota v. Toyota Motor Co., Ltd.*,
　1973-1 Trade Cases ¶ 74,398, 1973 WL 778 (S.D.N.Y. 1973) ................................ 7

*Thomas v. Christopher*,
　169 F.R.D. 224 (D.D.C.1996) ................................................................................. 17

*Thomas v. NCO Financial Sys.*,
　No. CIV.A. 00-5118, 2002 WL 1773035 ................................................................ 7

*Thomas Wong, et al. v. Truebeginnings, LLC, d/b/a/ True.com*,
　No. 07-cv-01244 (N.D. TX) .................................................................................... 9

*Timothy Hennigan, Aaron McHenry, and Christopher Cocks, et al., v. General Electric Company*,
　No. 09-cv-11912 (E.D. Mich.) ................................................................................. 9

*Torrisi v. Tucson Elec. Power Co.*,
　8 F.3d 1370 (9th Cir.1993) ..................................................................................... 25

*Trombley v. Nat'l City Bank*,
　759 F. Supp. 2d 20 (D.D.C. 2011) ....................................................................... 6, 15

*Trombley v. Nat'l City Bank*,
　826 F. Supp. 2d 179 (D.D.C. 2011) ..................................................................... 8, 9

*Twigg v. Sears, Roebuck & Co.*,
　153 F.3d 1222 (11th Cir. 1998) .............................................................................. 22

*United States v. District of Columbia*,
   933 F. Supp. 42 (D.D.C. 1996) ................................................................................. 4

*Wells v. Allstate Ins. Co.*,
   210 F.R.D. 1 (D.D.C. 2002) ..................................................................................... 21

**Statutes**

Cal. Bus. and Prof. Code §§ 17200*, et seq.* ................................................................. 1

Cal. Bus. and Prof. Code, §§ 17500*, et seq.* ............................................................... 1

California's False Advertising Law ................................................................................ 1

California's Unfair Competition Law ............................................................................ 1

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed.2010) .............................. 6

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (5th ed.2011) ........................... 21

*Manual for Complex Litigation,* Third (1999) .............................................................. 6, 7

*Manual for Complex Litigation,* Fourth (2004) ............................................................... 8

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## LIST OF EXHIBITS

Settlement Agreement.................................................................................................1

Declaration of Hassan A. Zavareei .............................................................................2

Declaration of Edward A. Wallace ..............................................................................3

Settlement Website Content .........................................................................................4

Call-In Number Script ..................................................................................................5

Proposed Order ............................................................................................................6

## STATEMENT OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On October 21, 2010, Plaintiff Ellen Levine filed a class action lawsuit in this Court (the "*Levine* Action") alleging that Defendants represented on annual dues statements and their website that payment of an annual "practice assessment" or "special assessment" (hereinafter the "Assessment") was required for membership in the American Psychological Association ("APA"), even though payment of the Assessment was only required for membership in the American Psychological Association Practice Organization ("APAPO").  The proposed class consisted of all APA members in the United States who paid the Assessment as part of their annual dues.  Plaintiff Levine also alleged a proposed subclass of all APA members in California who paid the practice assessment as part of their annual dues.  The *Levine* Action alleged causes of action for:  (1) unjust enrichment; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code §§ 17200*, et seq.* and California's False Advertising Law ("FAL")*,* Cal. Bus. and Prof. Code, §§ 17500, *et seq.*; (3) fraud & deceit; and (4) negligent misrepresentation.  On November 4, 2010, Plaintiff Eric Engum, a Tennessee resident, also filed a class action in this Court making essentially the same allegations (the "*Engum* Action").

On January 18, 2011, Plaintiffs filed an unopposed motion to consolidate the *Levine* and *Engum* Actions (the "Consolidated Action") and for leave to file a Consolidated Class Action Complaint (the "Consolidated Complaint").  On January 31, 2011, the Court granted the motion to consolidate and ordered the Consolidated Complaint to be deemed filed and served on that same day.  The Consolidated Complaint also alleged a nationwide class of all APA members that paid the practice assessment, as well as California and Tennessee subclasses and the following

three causes of action:  (1) unjust enrichment, (2) violation of California's UCL, and (3) violation of California's FAL.

On March 2, 2011, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  On May 30, 2012, the Court issued an order granting Defendants' motion, but gave Plaintiffs an opportunity for further briefing as to whether an amended complaint adding claims for fraudulent inducement, rescission, and negligent misrepresentation would be futile.  The Parties filed supplemental briefing on Plaintiffs' proposed amendments.  On February 2, 2013, the Court issued an order denying Plaintiffs' request for leave to amend and dismissing the Consolidated Complaint with prejudice.  The Court's decisions were based primarily on its determination that even though Defendants' representations regarding the Assessment were arguably misleading, it was not reasonable for Plaintiffs to have relied on those representations. The Court also held under a choice-of-law analysis that D.C. law, not California law, applied to Plaintiffs' statutory claims because Plaintiffs had originally filed their case in D.C.  The Court then ruled that D.C.'s consumer protection law did not cover Defendants' alleged misconduct.

On February 26, 2013, Plaintiffs appealed the district court's rulings to the D.C. Circuit. Oral arguments were held on April 7, 2014.  On March 27, 2013, while the appeal was pending, Plaintiffs' counsel also filed another action in California district court, *Grossman v. American Psychological Association, et al.* (the "*Grossman* Action"), on behalf of California residents that paid the Assessment to have California law apply to their claims.  Like the Consolidated Action, Plaintiffs in *Grossman* alleged violations of California's UCL and FAL, in addition to common law causes of action.  The *Grossman* Action was subsequently transferred to this Court and stayed pending resolution of the Consolidated Action appeal.

On September 5, 2014, the D.C. Circuit issued an opinion affirming in part and reversing in part the district court's dismissal and remanding for proceedings consistent with the D.C. Circuit's opinion.  In so ruling, the appellate court disagreed with the Court's conclusion that Plaintiffs could not have reasonably believed that payment of the Assessment was mandatory for APA membership rather than optional.  The appellate court also held that Plaintiffs were entitled to file a motion for leave to amend their complaint to add claims for fraudulent inducement and negligent misrepresentation.  The D.C. Circuit, however, affirmed the Court's ruling on the choice-of-law analysis and dismissal of Plaintiffs' statutory causes of action.

Following remand, after four years of litigating the viability of Plaintiffs' legal claims, the Consolidated Action and the *Grossman* Action were now ready to proceed to active litigation on class certification and merits issues, which likely would have involved extensive discovery and motion practice.  Against this backdrop, the parties decided it was an appropriate time to engage in settlement negotiations to attempt to reach a resolution to avoid further costly and protracted litigation.  On October 17, 2014, the parties filed a joint motion to stay all proceedings to allow them to conserve resources and focus on settlement negotiations.  The Court granted the motion and ordered both cases stayed until January 16, 2015.  The stay was later extended until February 16, 2015.

Representative Plaintiffs and Defendants (collectively the "Settling Parties") have accordingly engaged in lengthy and intense arms-length negotiations that culminated in the execution of the Settlement Agreement.  The settlement provides valuable monetary benefits for Settlement Class Members (as defined in the Settlement Agreement, Ex.1), and readily meets the standard for preliminary approval.  In evaluating a class settlement, courts in this Circuit and

others have repeatedly and expressly deferred to the judgment of experienced counsel achieving class-wide settlements through arms-length negotiations.

Courts recognize that there is a "'principle of preference' that encourages settlements." *Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.D.C. 1999). "The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002). Approval of proposed class action settlements like this one is appropriate if the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also United States v. District of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996) ("'The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties.'") (quoting *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir.1983)). "In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. 'Absent evidence of fraud or collusion, such settlements are not to be trifled with.'" *Osher v. SCA Realty I, Inc.,* 945 F. Supp. 298, 304 (D.D.C. 1996) (internal citations omitted).

This settlement negotiated by the parties is more than fair, reasonable, and adequate. The Settlement Agreement provides, *inter alia*:

> **A.  Settlement Class.**  Persons in the United States who are current or former members of APA and paid the APAPO Practice Assessment for APA dues years 2001 through the Effective Date. [Settlement Agreement, ¶¶ GG].

> **B.  Settlement Fund.**  Defendants shall establish a $9,020,000 Settlement Fund, from which Settlement Class Members may receive reimbursement for Assessment fees paid during the Class Period calculated on a *pro rata* basis. [Settlement Agreement ¶¶LL, 24-30].

4

**C. Notice and Claims Administration.** Defendants will pay up to $200,000 for notice, administration of the settlement, and other notice and administrative costs. [Settlement Agreement ¶¶ Q, 34-47]. Each class member will receive direct notice—by email or by mail—and will be provided a simple mechanism for submitting a very straightforward claim—either by mail or online.

**D. Attorneys' fees, costs, and expenses.** Attorneys' fees, costs, and expenses, and incentive awards, subject to the approval of the Court, shall be paid from the Settlement Fund. Defendants have agreed not to oppose an application for payment of not more than 30% of the Settlement Fund for attorneys' fees [Settlement Agreement ¶¶ 57-60].

**E. Practice changes.** Defendants intend to implement and maintain certain changes regarding their representation and collection of the APAPO Practice Assessment. [Settlement Agreement ¶21].

The Settlement Agreement is supported by the Representative Plaintiffs and proposed class counsel, Tycko & Zavareei LLP and Wexler Wallace LLP ("Lead Settlement Class Counsel"), and Whitfield Bryson & Mason LLP, The Miller Law Firm, and Greg Coleman Law PC (collectively "Settlement Class Counsel"). Exhibit 2, Declaration of Hassan A. Zavareei ("HAZ Decl.") ¶¶ 25-37, 44; Exhibit 3, Declaration of Edward A. Wallace ("EAW Decl.") ¶¶ 5, 7-12. The Settlement is intended to resolve all claims relating to payment of the Assessment during the Class Period (as defined in the Settlement Agreement, Ex. 1). Representative Plaintiffs submit that the settlement is not only within the range of fair, adequate, and reasonable under the relevant facts, but *is in fact* fair, adequate and reasonable, and should be preliminarily approved by the Court concurrent with certification of the requested Settlement Class. Accordingly, Representative Plaintiffs, by and through Proposed Settlement Class Counsel, respectfully move the Court for entry of an order:

(1)      Preliminarily approving the settlement as set forth in the Settlement Agreement;

(2)      Certifying the Settlement Class;

(3)     Appointing Ellen G. Levine, Ruth Fallenbaum, Eric S. Engum, and Ira Grossman as Representative Plaintiffs;

(4)     Appointing as Lead Settlement Class Counsel Hassan A. Zavareei, Tycko & Zavareei LLP and Edward A. Wallace, Wexler Wallace LLP;

(5)     Appointing as Settlement Class Counsel Tycko & Zavareei LLP, Wexler Wallace LLP, Whitfield Bryson & Mason LLP, The Miller Law Firm, and Greg Coleman Law PC; and

(6)     Scheduling a Final Approval Hearing in this matter.

## II.     PRELIMINARY APPROVAL IS APPROPRIATE

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. While court approval is required in order to protect the interests of the absent class members, courts assume a limited role when reviewing a proposed class action settlement. *In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C. 1974).

Preliminary approval of a proposed settlement is warranted so long as the preliminary evaluation by the Court does not raise obvious doubts about the settlement and the settlement is with the range of possible approval:

> Generally, preliminary approval of a class action settlement will be granted if it appears to fall "within the range of possible approval" and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Newberg on Class Actions,* § 11:25 (4th ed.2010) (quoting *Manual for Complex Litigation,* Third, § 30.41 (1999)); *In re Vitamins Antitrust Litig.,* No. 99–197, 1999 WL 1335318, at *5 (D.D.C. November 23, 1999).

*Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011). Courts recognize that this analysis does not mean that it should substitute their judgment for that of counsel who negotiate a settlement; rather, the Court's "job is to insure that an arms-length settlement, without collusion or fraud, adequately and fairly meets the interests of the class members." *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 79 F.R.D. 571, 580 (E.D. Pa. 1978). In the

context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. *Osher v. SCA Realty I*, 945 F. Supp. 298, 304 (D.D.C. 1996) (citing *Sunrise Toyota v. Toyota Motor Co., Ltd.,* 1973-1 Trade Cases ¶ 74,398 at 93,821, 1973 WL 778 (S.D.N.Y. 1973)).

At the preliminary approval stage, the court does not make a final determination of the merits of the proposed settlement.

> In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 456 (2d Cir. 1974). The court determines whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval. *See In re Prudential Securities Incorporated Limited Partnerships Litigation,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citing Manual for Complex Litigation § 30.41 at 237 (3d ed. 1995)).

*Thomas v. NCO Financial Sys.,* No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002). "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Here, the facts establish that this is a fair, adequate and reasonable settlement deserving of preliminary approval.

### A.     The Parties Undertook Arms-length Negotiations

The Settling Parties litigated the viability of Plaintiffs' claims for four years, from the trial court up to the D.C. Circuit and back to the trial court again. At that point, the Settling Parties were ready to commence litigation on merits and class certification issues, which would have been costly and time consuming. Given all that had transpired previously and the posture

of the case, the Settling Parties believed it was an appropriate time to undertake settlement negotiations.  The Settling Parties hired an experienced neutral mediator to facilitate negotiations and exchanged large amounts of data and detailed mediation statements prior to the mediation session.  On November 14, 2014, representatives of the Settling Parties attended a mediation session conducted by the neutral mediator.  After approximately thirteen hours of negotiations, the Settling Parties reached an agreement to settle the litigation.  Thereafter, the Settling Parties engaged in extensive negotiations to craft their final written settlement agreement.  The negotiations that led to the proposed settlement were serious, informed, and adversarial.  HAZ Decl. ¶¶ 40-42; EAW Decl. ¶¶ 13-15.  Additionally, there are no obvious flaws in the settlement or distribution plan, and no segment of the proposed settlement class is unduly favored over any other.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *Manual for Complex Litigation* at § 30.41 (noting that where the proposed settlement appears to be the product of "serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted").

Here, Settlement Class Counsel are experienced litigators in both class action and other civil litigation.  HAZ Decl. ¶¶ 3-24; EAW Decl. ¶¶ 3-4.  In recognition of Co-Lead Class Counsel's excellence, National Law Journal named Tycko & Zavareei one of 50 Elite Trial Law Firms in 2014.  Hassan Zavareei has amassed substantial experience handling complex civil litigation and class action litigation.  Over the past nineteen years he has taken several cases to trial, including jury trials that have lasted several months.  Mr. Zavareei has argued appeals in both the D.C. Circuit and the Fifth Circuit.  Tycko & Zavareei LLP has litigated—and continues to litigate—numerous other class actions, including *Trombley v. National City Bank*, No. 10-CV-

00232 (D.D.C. 2011); *Gregory Geis and Stuart Roper, et al. v. Airborne Health, Inc.*, et al., No. 07-cv-04238 (D. NJ); *Thomas Wong, et al. v. Truebeginnings, LLC, d/b/a/ True.com*, No. 07-cv-01244 (N.D. TX); *Chad Minnick, et al. v. Clearwire US, LLC*, No. 09-cv-00912 (W.D. Wash.); *Timothy Hennigan, Aaron McHenry, and Christopher Cocks, et al., v. General Electric Company*, No. 09-cv-11912 (E.D. Mich.) and have litigated civil actions through trial and appeal. For example, as Class Counsel in *Trombley v. National City Bank*, 1:10-cv-00232-JDB (D.D.C.), Tycko & Zavareei negotiated a settlement that made substantial benefits available to approximately 2.4 million Settlement Class Members. The settlement was given final approval by this Court. *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011). Furthermore, as Class Counsel or Settlement Class Counsel Tycko & Zavareei has negotiated settlements in numerous class actions against financial institutions including *Jessica Duval, et al. v. Citizens Financial Group*, Inc., et al, No. 1:10-cv-21080 (S.D. Fla.) (resulted in a $137.5 million settlement that has been preliminarily approved); *Shannon Schulte, et al. v. Fifth Third Bank.*, No. 1:09-cv-06655 (N.D. Ill.) (resulted in a $9.5 million settlement that has been approved) and *Mascaro, et al. v. TD Bank, Inc.*, No. 10-cv-21117 (S.D. Fla.) (resulted in a resulted in a $62 million settlement that has been preliminarily approved). *See* HAZ Decl. ¶¶ 3-24, Ex. A.

Wexler Wallace LLP is a nationally-recognized leading firm in complex class litigation and multidistrict litigation, and attorneys at the firm have been recognized by their peers as well as by legal organizations. Edward Wallace has been recognized as both an Illinois Super Lawyer and has an AV Preeminent rating from Martindale-Hubbell—the highest peer review rating. EAW Decl. ¶¶ 3-4. Attorneys at the firm have been appointed to numerous leadership positions in class action cases across the country, where they have successfully settled numerous matters or tried those cases to verdict. *See, e.g., In re Pharmaceutical Industry Average Wholesale Price*

*Litig.*, MDL No. 1456, No. 01-cv-12257-PBS (D. Mass.) (served as co-lead counsel in a pharmaceutical overpricing case; settlements with various defendants totaling approximately $350 million); *In re Pet Foods Prods. Liab. Litig.*, MDL No. 1850 (D.N.J.) (co-lead counsel in a consumer multidistrict litigation arising from the largest pet food recall in history, which resulted in a $24 million settlement); *Roberts, et al. v. Electrolux Home Prods., Inc.*, No. 12-cv-01644 (C.D. Cal.) (co-lead class counsel in a settlement valued at over $35 million); *Jo Huskey, et al. v. Ethicon, Inc.*, No. 12-cv-05201 (S.D.W. Va.) (served on plaintiffs' steering committee in corresponding MDL where Edward Wallace tried the case to a jury verdict of $3.27 million). *See* EAW Decl. at Ex. A.

The Miller Law Firm, P.C. is one of the premier litigation law firms in the United States and Michigan's leading financial class action firm.  A recognized leader in the area of complex commercial litigation, the firm is ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation.  Since the firm's founding in 1994, the firm has developed a national reputation for successfully prosecuting securities fraud and consumer class actions.  As Lead Counsel or Co-Lead Counsel appointed by judges in some of the country's largest and most complex cases, the firm has achieved over $1 billion in settlements and/or verdicts on behalf of class members.  *See* HAZ Decl. at Ex. B.

Gary E. Mason, one of the founding members of Whitfield Bryson & Mason, LLP (formerly Mason LLP), has over 20 years of experience litigating complex cases arising from defective construction materials.  Mr. Mason has been invited to speak about class actions and defective construction materials at seminars and at AAJ's annual convention.  His experience includes acting as lead counsel or court appointed class counsel in numerous class actions involving claims of defective products.  The law firm of Whitfield, Bryson & Mason LLP is an

extremely successful firm with a nationwide practice which emphasizes class action and complex litigation.  As demonstrated by the willingness of courts in numerous jurisdictions to appoint Mr. Mason and his firm to leadership positions in substantial cases throughout the country, the firm has the expertise, experience and resources to prosecute the instant litigation.  *See* HAZ Decl. at Ex. D.

Greg Coleman Law PC is an AV rated, full-service law firm composed of a carefully assembled, talented group of attorneys with sound judgment, exceptional skills and broad expertise.  The firm's goal is simple: Provide high quality legal services in cases involving clients individually or all the way up to nationwide classes using an innovative, progressive and motivated approach to litigation.  To this end, the firm's attorneys recognize the importance of court room experience at all levels and the value of a diverse legal practice.  They are not simply discovery litigators.  The attorneys' combined 70 plus years of litigation experience in state and federal trial and appellate courts across the country has taught them to focus on what matters in a case and what is necessary to take a case to trial.  The firm is focused on obtaining the best possible outcomes for our clients.  HAZ Decl. at Ex. C.

These experienced counsel are strongly of the opinion that the settlement in this action is fair, adequate, and reasonable (HAZ Decl. ¶ 3; EAW Decl. ¶ 5), and their opinion "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement."  *Lorazepam v. Mylan Laboratories, Inc.,* MDL No. 1290, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003).

**B.     Settlement Class Counsel Had Sufficient Information To Make A Reasonable Assessment Of The Risks Of Litigation.**

"In evaluating the fairness and adequacy of a settlement, it is important to consider whether the settlement was reached after extensive factual development, so that counsel on both

11

sides would have had information sufficient to make a reasonable assessment of their risks of litigation." *Luevano v. Campbell*, 93 F.R.D. 68, 86 (D.D.C.1981).  In some cases, this information cannot be gleaned until after hard-fought discovery reveals documents that show unknown strengths or weaknesses of the class action claims.  But this is not such a case.  When the litigation was filed, Plaintiffs already had copies of the dues statements they alleged were misleading.  Plaintiffs were also in possession of correspondence from Defendants and its membership, as well as articles from professional journals indicating APA members believed that they were misled by the representations on the dues statements with regard to whether payment of the Assessment was mandatory for APA membership or optional.  The language used in the dues statements was not in dispute and the parties litigated extensively the issue of whether Plaintiffs could state a viable cause of action based on this language.  The D.C. Circuit eventually concluded that at least with respect to some of Plaintiffs' causes of action, Plaintiffs had made allegations sufficient to state a viable claim.

Although Plaintiffs cleared this initial hurdle, they needed to seek and obtain class certification on a nationwide basis or for state subclasses and prevail on the merits.  Defendants intended to oppose class certification, denied any liability whatsoever, and they had substantial merits defenses that they planned to assert in the litigation.  As just one example, Defendants would likely contend that actual or reasonable reliance was an element of some or all of Plaintiffs' claims.  Courts have held that in some instances proving the element of reliance requires individualized inquires not amenable to proof on a class wide basis.  *E.g. Gunnells v. Healthplan Servs.*, 348 F.3d 417, 435 (4th Cir. 2003).  Thus, at the end of the day, Plaintiffs still faced the risk that the trier of fact would conclude that the representations on the dues statements

were not misleading.  While Plaintiffs strongly believe that class certification would be granted and that they would ultimately prevail on the merits of their claims, this was far from certain.

To evaluate the risks and value of the litigation from a settlement perspective, Lead Class Counsel used informal discovery to gather specific and crucial information regarding how many APA members paid the Assessment, the amount of the Assessment payments, the amount of Assessment fees collected by the APA during the Class Period, and the payment history of the class members over time.  Lead Class Counsel had conferences with Defendants' counsel to evaluate this information and requested additional information to ensure a complete picture of the proposed class.  Lead Class Counsel carefully cumulated, studied, and applied this information to the negotiation of the Settlement Agreement.  HAZ Decl. ¶¶ 39, 44-47; EAW Decl. ¶¶ 13-15.  Based on this information, Lead Settlement Class Counsel concluded that under the circumstances, a settlement with excellent monetary and other relief was undoubtedly in the interests of the Settlement Class Members.

While this settlement was achieved after the parties had the benefit of informal discovery to evaluate the possibility of settlement, this Court has repeatedly held that swift settlements without any discovery should be approved.  *Radosti v. Envision EMI, LLC*, 717 F. Supp.2d 37, 62 (D.D.C. 2010) ("In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery.")  In this case, the parties reached a settlement agreement before formal discovery began.  However, as noted above, there was significant factual investigation into possible class claims and the financial situation of defendant prior to the mediation.  *See In re Vitamins Antitrust Litig.*, 1999-2 Trade Cas. ¶ 72, 726, 1999 WL 1335318, *4 (D.D.C. Nov. 23,

1999) ("The pursuit of early settlement is a tactic that merits encouragement; it is entirely appropriate to reward expeditious and efficient resolution of disputes") (internal citations omitted); *Lorazepam Antitrust Litig.*, 205 F.R.D. at 369 ("early settlement of these types of cases is encouraged.").

By contrast, the settlement here was anything but swift.  The class members had to wait for years while the parties litigated the viability of Plaintiffs' claims, and would have to wait years longer absent this settlement.  Plaintiffs also faced substantial risks on the merits of their claims and may not have recovered anything.  Although there was no formal discovery, there was extensive informal discovery during settlement negotiations during which Defendants provided Lead Class Counsel with all the information they requested in order to make a full appraisal of the risks associated with pressing forward with the litigation and the value of the case for settlement purposes.  Lead Class Counsel also conducted its own investigation based on publicly available information and information provided by individual class members.  HAZ Decl. ¶¶ 38-39*;* EAW Decl. ¶¶ 13-15.

In short, Settlement Class Counsel had more than sufficient information to evaluate the merits of their claims against Defendants and to evaluate the adequacy and fairness of ultimate Settlement Agreement reached by the parties.

### C.       The Settlement Provides Excellent Relief for Settlement Class Members

The relief the Settlement Agreement provides for Settlement Class Members is outstanding.  Defendants agreed to create a settlement fund of $9 million to reimburse Settlement Class Members for the amount of Assessment fees they paid for APA dues years 2001 through the Preliminary Approval Date of the Settlement Agreement *pro rata* based on the total amount of Assessment fees paid during this time frame.  *See* Settlement Agreement ¶¶ LL, 24-30.  In

addition, Defendants have agreed to pay up to $200,000 for notice and administration costs.  *See*

Settlement Agreement ¶¶ Q, 29.  After the costs of Notice and Claims administration (to the

extent such costs exceed the $200,000 that Defendants are required to pay), attorneys' fees,

costs, and expenses, and incentive awards are distributed, if the amount of valid claims submitted

by Settlement Class Members is less than the amount of money remaining in the Settlement

Fund, then the remainder shall, if feasible, be distributed on a *pro rata* basis to each Settlement

Class Member submitting a valid claim until the fund is exhausted.  Settlement Agreement ¶ 54.

 Under an extremely aggressive theory of damages and lenient application of the statute of

limitations, Plaintiffs would be entitled to recover all Assessment fees paid by the class from

2001 through 2010, which equals approximately $47 million.  Accordingly, the settlement

provides the class approximately 20% of the damages they would seek at trial.  By contrast,

under Defendants' likely theory of damages, Plaintiffs' would be able to recover at most $5

million (assuming they prevailed on the merits-issues).  Thus, the settlement provides with class

with an 80% recovery over what Defendants asserted was Plaintiffs' best possible recovery.  The

monetary relief provided by the settlement is therefore extremely favorable to the Settlement

Class Members.  *See, e.g.*, *In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.*, 4 F.

Supp. 3d 94, 103-04 (D.D.C. 2013) (approving settlement that represented between four and

eight percent of plaintiffs' estimated best recovery); *Trombley*, 759 F. Supp. 2d at 25-26 (finding

settlement that represented between 17% and 24% of estimated trial recovery to be reasonable);

*In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65-66 (D.D.C. 2003) (approving settlement that

represented 16% of plaintiffs' best-case-scenario damages, and between 32.5 and 54% of

defendants' damages estimate).

**D.      The Settlement Fairly Allocates the Settlement Fund**

The proposed fund distribution is fair, adequate and reasonable.  Because Plaintiffs' case is premised upon the amount of Assessment fees paid by Settlement Class Members over the class period, it makes sense that the proposed allocation of the settlement fund also takes such legal theories into consideration.  *See* Settlement Agreement ¶¶ 48-53.  Pursuant to the Settlement Agreement, a Settlement Class Member may make a claim by submitting a claim form.  For each claimant, the Settlement Administrator will determine the total amount of Assessment fees paid by each Claimant since dues year 2001 (referred to herein as each claimant's "Claim Value").  The Settlement Administrator will then add together the Claim Values calculated for all Claimants (the "Aggregate Claim Value"). The Settlement Administrator shall then divide the Net Cash Settlement Fund by the Aggregate Claim Value (the "Claim Ratio").  The Settlement Administrator shall thereafter calculate the Settlement Payment to each Claimant by multiplying the Claimant's Claim Value by the Claim Ratio.  Accordingly, the more in Assessment fees a Settlement Class Member paid during the Class Period, the higher their claim amount.

The proposed allocation plan fits Plaintiffs' legal theories, and as a result directs funds in a manner that maximizes payments to the Settlement Class Members that suffered most due to Defendants' alleged unlawful conduct.

**III.      CERTIFICATION OF THE SETTLEMENT CLASS**

Prior to granting preliminary approval of a class action settlement, it is appropriate for a Court to certify a class for settlement purposes.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The settling parties have stipulated, for settlement purposes only, to the following definition of the Settlement Class:

All persons in the United States who are current or former members of APA and paid the APAPO Practice Assessment for APA dues years 2001 through the Preliminary Approval Date.

Settlement Agreement ¶ GG.

As explained herein, the proposed Settlement Agreement meets the requirements of Rule 23 for settlement purposes.  Thus, respectfully, the Settlement Class should be certified.

**A.     The Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure**

Rule 23(a) sets forth the following prerequisites for certifying a class:  "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements are all satisfied in this matter.

**1.     The Class is Sufficiently Numerous Because Joinder of All Members of the Class is Impracticable**

Rule 23(a)(1) requires a showing that "the class is so numerous that individual joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).  That said, courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement.  *See, e.g., Thomas v. Christopher,* 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd. in part,* 139 F.3d 227 (D.C. Cir. 1998).  The

Settlement Class is estimated to include thousands of members.  Thus, the numerosity

requirement is satisfied.

### 2. Questions of Law and Fact Are Common to the Settlement Class

Commonality requires that the plaintiff raise claims which rest on "questions of law or

fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This rule does not require that "every issue

of law or fact be the same for each class member."  *Bynum v. District of Columbia,* 217 F.R.D.

43, 46 (D.D.C. 2003).  Rather, "[t]he commonality test is met when there is at least one issue, the

resolution of which will affect all or a significant number of the putative class members."

*Coleman v. Pension Benefit Guar. Corp.,* 196 F.R.D. 193, 198 (D.D.C. 2000) (internal quotation

marks omitted).  Because the commonality requirement may be satisfied by a single common

issue, courts have noted that it is "often easily met."  *In re Vitamins Antitrust Litig.,* 209 F.R.D.

251, 259 (D.D.C.2002).

Questions of law and fact common to all Settlement Class Members exist, and include,

*inter alia*:

a.   Whether Defendants omitted, misrepresented, concealed or manipulated material

facts from Plaintiffs and the Class regarding the special or practice assessment

fee;

b.   The nature and extent of Defendants' prior knowledge of the material facts

relating to the manner of billing for and collection of special or practice

assessment fees;

c.   Whether Plaintiffs and Settlement Class Members are entitled to damages and/or

restitution, plus costs, interest, and attorney fees;

d.   Whether Defendants have been unjustly enriched by their misconduct; and

e. Whether declaratory and/or injunctive relief should be granted requiring that Defendants cease their wrongful billing practices.

These legal and factual questions are common to each Settlement Class Member. Therefore, the commonality requirement is satisfied.

### 3. Representative Plaintiffs' Claims are Typical of the Settlement Class

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that the claims of the representative be typical of those of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement and the commonality requirement "tend to merge" because both serve as "guideposts" as to whether a particular class action is practical and whether the claims of the plaintiff and class are sufficiently interrelated to protect the class members in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364 (1982).

Representative Plaintiffs' claims arise from the same course of conduct as the other Settlement Class Members' claims. Representative Plaintiffs and all other Settlement Class Members were subject to the same representations on the APA dues statements and paid the Assessment. Additionally, Representative Plaintiffs and all other Settlement Class Members' claims are premised on the same legal theories. Accordingly, the typicality requirement is satisfied.

### 4. Rule 23(a)'s Adequacy Requirement is Satisfied

The fourth and final requirement of Rule 23(a) requires that the court determine whether the proposed Representative Plaintiffs can adequately represent the interests of the class. In making this determination, the court must be assured that (1) the proposed representative does not have any conflicts of interest with other class members; and (2) that the representative will

vigorously prosecute the interests of the class through qualified counsel.  *McReynolds v. Sodexho Marriott Services, Inc.,* 208 F.R.D. 428, 446 (D.D.C. 2002).

Representative Plaintiffs do not have any claims antagonistic to or in conflict with those of the other Settlement Class Members, as Representative Plaintiffs are pursuing the same legal theories as the rest of the Settlement Class relating to the same course of Defendants' conduct. Additionally, Lead Settlement Class Counsel have an extensive background in litigating complex litigation and consumer class actions, have been appointed class counsel in prior cases, and have the resources necessary to prosecute this action to its conclusion.  *See* Ex. A to HAZ Decl. (Resume of Tycko & Zavareei LLP); Ex. A to EAW Decl. (Resume of Wexler Wallace LLP). Thus, the adequacy requirement of Rule 23(a)(4) is satisfied.

### B.    The Requirements of Rule 23(b)(3) are Satisfied

Rule 23(b)(3) authorizes class actions to proceed where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *Id.*  "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 92 (D. Mass. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 619, 615 (1997)).  Where, as here, a court is deciding on the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered. *Amchem*, 521 U.S. at 619.  The remaining elements or Rule 23, however, continue to apply in settlement-only certification situations.  *Id.* at 619.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *In re Lupron*, 228 F.R.D. at 91 (*citing Amchem*, 521 U.S. at 623).  "Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions *predominate* over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); s*ee generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (5th ed. 2011).  As demonstrated *supra* at Section III.A.2 when addressing commonality, several issues of law and fact common to all Settlement Class Members are present in this mater.  These common issues of law and fact predominate over any potential individual issues which may arise, as they could be resolved through the presentment of proof common to all Settlement Class Members.  Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

Additionally, the superiority requirement of Rule 23(b)(3) is satisfied.  Under this requirement, "maintaining the present action as a class action must be deemed by the court to be superior to other available methods of adjudication.  A case will often meet this standard when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'"  *Bynum v. Dist. Of Columbia,* 217 F.R.D. 43, 49 (D.D.C. 2003) (citations omitted).  *See also Wells v. Allstate Ins. Co.* 210 F.R.D. 1, 12 (D.D.C. 2002)

("Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to

'consolidate otherwise identical actions into a single efficient unit.'").

A class action is not only the most desirable, efficient, and convenient mechanism to

resolve the claims of the Settlement Class, but it is almost certainly the only fair and efficient

means available to adjudicate these claims.  *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809

(1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to

litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in

court if a class action were not available").  Individual Settlement Class Members likely would

be unable or unwilling to shoulder the great expense of litigating the claims at issue against

Defendants given the comparatively small size of each individual Settlement Class Members'

claims.  Thus, it is desirable to adjudicate this matter as a class action.

## IV.    NOTICE

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all

class members who would be bound by a proposed settlement . . . ."  Pursuant to Rule

23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the

circumstances."  The purpose of notice is to "afford members of the class due process which, in

the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded

from the class action and not be bound by any subsequent judgment."  *Peters v. Nat'l R.R.*

*Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle and Jacquelin*,

417 U.S. 156, 173–74 (1974)).  Further, notice must fairly describe the litigation and the

proposed settlement and its legal significance.  *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153

F.3d 1222, 1227 (11th Cir. 1998) ("[The notice] must also contain an adequate description of the

proceedings written in objective, neutral terms, that, insofar as possible, may be understood by

the average absentee class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained").  Notice provided for in the Proposed Settlement satisfies the requirements of Rule 23 and all relevant Due Process concerns.  Settlement Agreement ¶¶ 36-47.

Rule 23(c)(2) provides that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).  The Settlement provides for such individual notice.  The APA keeps track of its members' contact information and it has email addresses for over 80% of its members.  All of these Settlement Class Members will receive email notification of the Proposed Settlement that will allow them to submit a claim electronically on the settlement website.  Any Settlement Class Members for whom the APA does not have an email address or whose email address is found to be invalid will receive a mailed Notice and Claim Form, which will be in the form of a postcard.

In addition to the individual notice discussed above, and despite the fact that the vast majority of Settlement Class Members will receive notice by direct mail, notice will also include a publication element.  An informational website will be established and will contain documents and other information regarding the Settlement.  The website will allow Settlement Class Members to fill-out and submit claim forms electronically, and to print claims forms.  A link to this website will be placed on the Defendants' websites.  Defendants will also publish a copy of the Notice and Claim Form on their websites.

### A.      Contents of Notice

The proposed Notice and Claim Form are attached to the Settlement Agreement as Exhibits B-D.  The Notice includes a fair summary of Settling Parties' respective litigation positions; the general terms of the settlement as set forth in the Settlement Agreement; instructions for how to opt-out of or object to the settlement; the process and instructions for making a claim; and the date, time, and place of the Final Approval Hearing.  *Id.*

The content of the proposed notice is more than sufficient because it "fairly apprise[s] the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."  *See Maywalt v. Parker and Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2nd Cir. 1995) (internal quotations omitted).  The notice will provide class members with information on the class, the purpose and timing of the final approval hearing, opt-out procedures and deadlines, and the deadline and process for filing claims packages.  In addition, it will provide a telephone number that proposed Settlement Class Members may use to the extent they have any questions.  Attached hereto as Exhibits 4 and 5 are copies of the proposed content of the settlement website and a script for the call-in number, which Plaintiffs respectfully request the Court preliminarily approve along with the Notice and Claim Form.

### 1.      Opting Out

The notice clearly explains that any member of the Settlement Class who wishes to opt out of the Settlement Class must mail a notice of intention to opt out (in no particular format, but which contains the words "opt out," "exclusion," or words to that effect clearly indicating an intent not to participate in the Settlement and sets forth the Settlement Class Member's name,

address, and telephone number) to the Settlement Administrator.  To be effective, written notice must be postmarked within 90 days after the Preliminary Approval Date.

### 2.    Objecting

The notice also clearly explains that any member of the Settlement Class who wishes to object to the settlement must timely file a written statement of objection with the Court within 90 days of the Preliminary Approval Date.  Thus, Proposed Settlement Class Members are provided with ample time to submit any objections.  *See Maywalt v. Parker and Parsley Petroleum Co.,* 67 F.3d at 1079; *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom. Reilly v. Tucson Elec. Power Co.,* 512 U.S. 1220 (1994).

### B.    Scope of Notice

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314; *see also Shutts*, 472 U.S. at 812. The proposed notice is comprehensive and more than satisfies this standard, as it provides for emailed notice to all class members for whom the Defendants have an email address, and written notice provided directly by First Class U.S. mail to Settlement Class Members for whom Defendants do not have an email address or whose email address the Settlement Administrator determines to be invalid.  It is beyond dispute that notice by first class mail – such as that contemplated in the Notice Plan – ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive "the best notice practicable under the circumstances." *See, e.g., Eisen,* 417 U.S. at 173-75, 94 S.Ct. at 2150-51.  Further, email has been approved in cases similar to this one "where settlement class members' claims arise from their visits to Defendants' Internet

websites." *Browning v. Yahoo! Inc*., 2007 U.S. Dist. LEXIS 86266, at *13 (N.D. Cal. Nov. 16,

2007) (approving email notice to 14 million class members where 3.9 million class members

"whose email notice was undeliverable or where no email address could be located" also

received notice by traditional mail); *see also In re TD Ameritrade Account Holder Litig.*, No. C

07–2852 SBA, 2011 WL 4079226, at *10 (N.D. Cal. Sept. 13, 2011) (approving email notice

even where class members did not receive mailed notice "in cases where the delivery via email

failed," as "there is no requirement that notice be perfect"); *Lane v. Facebook*, No. C 08-3845

RS, 2010 U.S. Dist. LEXIS 24762, at *7-9 (N.D. Cal. Mar. 17, 2010) (even though some e-mail

filtered through a SPAM e-mail filter and not all class members saw it, the notice was adequate);

*Ramirez v. eWork, Inc.*, No. 06 cv 00686 WDM BNB, 2008 U.S. Dist. LEXIS 69700, at *5 (S.D.

Colo. Sept. 15, 2008) ("e-mailed individual notices were the best notice practicable under the

circumstances, which included the fact that eWork Markets, Inc. communicated with the Class

primarily through e-mail."); *Guy v. Casal Institute of Nevada, LLC*, No. 13-cv-02263, 2014 WL

1899006 (D. Nev. May 12, 2014) ("The Court in *Phelps* stated that there was no indication that

service by first class mail or email would be ineffective or inadequate.").

## V.    CONCLUSION

WHEREFORE, based on foregoing, Representative Plaintiffs respectfully request that the

Court enter an Order:

(1)    Preliminarily approving the settlement as set forth in the Settlement
       Agreement;

(2)    Certifying the Settlement Class;

(3)    Appointing Ellen G. Levine, Ruth Fallenbaum, Eric S. Engum, and Ira
       Grossman as Representative Plaintiffs;

(4)    Appointing as Lead Settlement Class Counsel Hassan A. Zavareei, Tycko
       & Zavareei LLP and Edward A. Wallace, Wexler Wallace LLP;

(5)     Ordering Notice to the Settlement Class pursuant to the submitted Notice Plan;

(6)     Appointing as Settlement Class Counsel Tycko & Zavareei LLP, Wexler Wallace LLP, Whitfield Bryson & Mason LLP, The Miller Law Firm, and Greg Coleman Law PC; and

(7)     Scheduling a Final Approval Hearing in this matter.

Respectfully submitted,

Dated: January 28, 2015

*Proposed Settlement Class Counsel*,

___/s/ Hassan Zavareei_____
Hassan A. Zavareei
Lorenzo B. Cellini
TYCKO & ZAVAREEI LLP
Suite 808
2000 L Street, N.W.
Washington, D.C. 20036
(202) 973-0900

### Certificate of Service by Electronic Means

I, Hassan A. Zavareei, one of the attorneys for Plaintiffs, hereby certify that the proceeding document was caused to be served electronically on January 28, 2015, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.


/s/ Hassan Zavareei